UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THAR PROCESS, INC.,

        Plaintiff/Counter-Defendant,

    v.

SOUND WELLNESS, LLC,

        Defendant/Counterclaimant/Third-
        Party Plaintiff,

    v.

PLANT SCIENCE LABORATORIES, LLC, AND
MICHAEL BARNHART,

        Third-Party Defendants.

**DECISION AND ORDER**

21-CV-422S

## I.  INTRODUCTION

This is a case about hemp that was processed into low-quality and unmarketable CBD[1] oil. Plaintiff Thar Process, Inc. ("Thar"), a hemp processor, brought breach-of-contract claims against Defendant Sound Wellness, LLC, ("Sound Wellness") when Sound Wellness refused to pay for CBD oil that Thar had processed. Sound Wellness, in turn, brought counterclaims against Thar, alleging that Thar committed fraud and breached the parties' contract when it failed to inform Sound Wellness that the oil it processed would be of unmarketably low potency and then supplied Sound Wellness with

---

[1] CBD oil, or cannabidiol, is an oil made from cannabinoid hemp. "Cannabinoid hemp is any product processed or derived from hemp, that is used for human consumption including for topical application for its cannabinoid content, that does not contain more than 0.3% THC. Cannabidiol or 'CBD' products are an example of cannabinoid hemp products and can come in a variety of different forms including but not limited to tinctures (CBD oil), pills, capsules, balms, lotions and food or beverage products." "What is Cannabinoid Hemp?" https://health.ny.gov/regulations/hemp/faqs.htm, accessed 1/10/2022 at 12:48 p.m.

that low-quality oil. Sound Wellness also brought third-party claims against the original sellers of the hemp—Third-Party Defendants Plant Science Laboratories, LLC, and Michael Barnhart (collectively "PSL")—alleging that they fraudulently induced Sound Wellness to buy low-potency hemp, among other things.

Presently before this Court are PSL's and Thar's motions to dismiss Sound Wellness's third-party claims and counterclaims, respectively, pursuant to Rules 12 (b)(6) and (b)(9) of the Federal Rules of Civil Procedure. (Docket Nos. 64, 66.) For the following reasons, PSL's motion will be denied in part and granted in part, and Thar's motion will be granted.

## II.  BACKGROUND

This Court assumes the truth of the following factual allegations contained in Sound Wellness's amended counterclaims and amended third-party complaint. (Docket Nos. 23, 40.)  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997). This Court also considers documents Sound Wellness attached to its counterclaims against Thar: a certificate of analysis of the Biomass done on October 19, 2018 (Docket No. 23-2) (the "NY COA"); the purchase agreement between Sound Wellness and PSL (Docket No. 23-3) ("the PSL Agreement"); the contract between Sound Wellness and Thar (Docket No. 23-5) ("the Thar Agreement"); and a certificate of analysis of the Biomass done on June 10, 2019. (Docket No. 23-6.)[2]

---

[2]     In determining whether dismissal is warranted, a court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material

## A.     Facts

Sound Wellness is a New York limited liability company with offices in Florida. (Amended Third-Party Complaint, Docket No. 40, ¶ 6.) The sole member of Sound Wellness is Sound Wellness Holdings, Inc., a Delaware corporation. (Docket No. 7 at p. 1.)[3] Thar is a Pennsylvania corporation with a principal place of business in Pennsylvania. (Id., ¶ 14.)[4] PSL is a New York limited liability company whose sole member, Michael Barnhart, is a resident of Buffalo, New York. (Id., ¶ 10.)[5] At all times described in Sound Wellness's pleadings, Thar and PSL were "engaged in a joint venture arrangement," in which Thar held a 60% interest and PSL held a 40% interest. (Id., ¶¶ 13, 44.)

### 1.  Sound Wellness negotiates with PSL and Barnhart

In November 2018, Sound Wellness and its parent company Jushi entered into negotiations with Michael Barnhart, the CEO of PSL, to buy hemp biomass and finished CBD products from PSL. (Id., ¶¶ 22, 30.) Barnhart also facilitated meetings between Sound Wellness and other sellers of biomass who were affiliated with PSL, namely Be Well NY, LLC and Donald Spoth Farm. (Id., ¶¶ 24-32.) The biomass that Sound Wellness ultimately bought from all three sellers (collectively referred to as "the Biomass") was

---

and relied on it in framing the complaint, …, and [4] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Healthnow New York Inc. v. Catholic Health Sys., Inc., No. 14-CV-986S, 2015 WL 5673123, at *2–3 (W.D.N.Y. Sept. 25, 2015) (Skretny, J.) (citing In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356–357 (S.D.N.Y. 2003) (footnotes omitted), aff'd 396 F.3d 161 (2d Cir. 2005), cert. denied, 546 U.S. 935, 126 S. Ct. 421, 163 L. Ed. 2d 321 (2005)).

[3] Sound Wellness is therefore a citizen of both Florida and Delaware, the citizenship of its sole member. See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000) (a limited liability company has the citizenship of each of its members).

[4] Thar is therefore a citizen of Pennsylvania. See 28 U.S.C. § 1332(c)(1). ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

[5] Both PSL and Barnhart are therefore citizens of New York.

grown by Donald Spoth Farm. (Id., ¶ 33.)

In connection with these meetings, PSL provided the NY COA, which analyzed the CBD content of the portion of the Biomass that Sound Wellness was considering purchasing from Be Well. The NY COA showed that the relevant portion of the Biomass had a CBD content of 13.1%. (Id., ¶ 49.) Sound Wellness purchased the relevant portion of the Biomass from Be Well for $65,000. (Id., ¶ 50.)

PSL also provided the NY COA in connection with the formation of a contract for Sound Wellness to buy a portion of the Biomass from PSL (Id., ¶¶ 56-61), and in connection with the formation of a contract for Sound Wellness to buy a portion of the Biomass from PSL and Donald Spoth Farms, LLC, as joint sellers. (Id., ¶ 71.)

Sound Wellness alleges that the NY COA analysis was not representative of the Biomass as a whole, but rather, was gleaned by PSL intentionally selecting only certain, high-potency, parts of the Biomass. (Id., ¶¶ 78-79.) Sound Wellness further alleges that PSL knew that the NY COA analysis was false but nevertheless provided it to Sound Wellness to induce it to enter the PSL Agreement and other purchase agreements. (Id., ¶¶ 80-82.) Sound Wellness alleges that Thar knew of this false representation, and knew throughout its relations with Sound Wellness that the Biomass had a low CBD content, due to its joint venture with PSL. (Docket No. 40, ¶ 52; Docket No. 23, ¶¶ 118-24.)

During negotiations in November 2018, Barnhart verbally represented to Sound Wellness that, while PSL's facility was not yet ready to process the Biomass, it would have equipment from Thar installed and be ready to begin processing by late December 2018 or early January 2019. (Docket No. 40, ¶ 34.) Barnhart also stated that by mid-January 2019, the PSL facility would be able to process 2,000 pounds of hemp per day.

4

(Id., ¶ 35.) Barnhart mentioned that PSL was in a joint venture with Thar. (Id., ¶ 36.) Sound Wellness alleges that Barnhart's representations about its ability to timely process were untrue, that Barnhart knew that they were untrue when he said them, and that he said them to induce Sound Wellness to enter into the PSL Agreement. (Id., ¶ 65.)

Sound Wellness maintains that it relied on Barnhart's representations in entering the PSL Agreement. (Id., ¶ 42.) The PSL Agreement provided that Sound Wellness would buy 2,000 pounds of hemp biomass and 30 kilograms of "50/50 crude" oil from PSL. (See PSL Agreement, Docket No. 23-3, pp. 2-17.) Sound Wellness also agreed to purchase an additional 15 kilograms of "50/50 crude" by January 31, 2019. PSL agreed to process the crude oil into a soft gel by February 7, 2019. (Id. at p. 2; see also Docket No. 40, ¶ 66.) The PSL Agreement guaranteed that the Biomass sold to Sound Wellness would have a CBD content of at least 10%. (Docket No. 40, ¶ 67.)

The "standard terms and conditions" of the PSL Agreement define "Products and Services" as including "Existing Crude, Additional Crude, mix for soft gels, tincture mix, Biomass, Biomass Extract and Finished Products." (Docket No. 23-3 at p. 7.) Pursuant to the PSL Agreement, Sound Wellness was to have "reasonable access to all Products and a reasonable time to inspect and reject non-conforming Products." (Id.) Sound Wellness further retained the right to "access all Products prior to delivering payment, and whether or not before third party or Seller testing results [were] available, to designate a qualified individual to obtain a sample of any Product and arrange" for a laboratory to perform analysis. (Id.) PSL warranted that the finished products would "be of merchantable quality" and would "meet or exceed the governing standards." (Id. at p. 8.) Exhibit D to the PSL Agreement, titled "Biomass Extraction Services," states that the potency range

5

of the Biomass PSL was selling, would be "greater than 10% but less than 18% CBD." (Id. at p. 15.)

Sound Wellness purchased the Biomass covered by the PSL Agreement for $120,000. (Docket No. 40, ¶ 68.) Sound Wellness entered into two other purchase agreements for other portions of the Biomass: the "Be Well Memorandum of Understanding" with nonparty Be Well, an affiliate of PSL, (id., ¶¶ 31, 48-49) and "the PSL-Spoth agreement" with PSL and nonparty Donald Spoth Farm as joint sellers. (Id., ¶¶ 69-70.)

Thar is not mentioned anywhere in the PSL Agreement, nor did Thar or its representatives sign it. Sound Wellness alleges Barnhart told it that Thar and PSL were "joint venturers" in an agreement involving the installation of the Thar equipment at the PSL facility. (Id., ¶ 17.) Barnhart and Thar told Sound Wellness that Thar had a 60% interest in the joint venture and PSL held a 40% interest. (Id., ¶ 20.) Sound Wellness alleges that, because of the joint venture, Thar knew of the NY COA, knew that it was false, and knew that Sound Wellness was relying on it when it entered the PSL Agreement. (Docket No. 23, ¶¶ 28, 35, 37.)

### 2.  Processing challenges with PSL and new processing contract with Thar

The hemp processing did not proceed as planned. First, PSL failed to install the Thar processing equipment by January 2019. (Docket No. 40, ¶ 87.) Then, in February 2019, Thar and PSL informed Sound Wellness that, because the processing would be done on Thar equipment, Sound Wellness would have to sign an agreement with Thar, the "Thar Agreement." (Docket No 40, ¶ 94; see also Docket No. 23-5 at p. 13.)

Sound Wellness negotiated certain terms of the Thar Agreement, but Thar

6

leveraged poor market conditions and an absence of competition to force Sound Wellness to accept its form agreement with only three negotiated terms. (Docket No. 23, ¶ 68; see also Thar Agreement, Docket No. 23-5 at p. 11.) These additional terms were that (1) Thar would have an employee or staff member on site during the extraction of Sound Wellness's Biomass, (2) a machinery issue causing a 15-day delay not covered by the Force Majeure clause would allow Sound Wellness to terminate the Agreement, and (3) Sound Wellness would have the right to a weekly inspection of the extraction facility. (Docket No. 23-5 at p. 11.) Sound Wellness executed the Thar Agreement on March 4, 2019. (Docket No. 23, ¶ 70.)

Under the Thar Agreement, Thar was to perform extraction processing on Biomass owned by Sound Wellness to produce "extracted oil." (Id., ¶ 71.) Sound Wellness was to pay 50% of the processing cost up front, and 50% upon completion of Thar's work. (Id., ¶ 72.)  Sound Wellness made an up-front payment of $130,000 to Thar on or about May 22, 2019. (Id., ¶ 73.)  Thar and PSL represented that the Biomass would be processed at the PSL facility in New York on the Thar equipment. (Id., ¶ 75.)

### 3. More processing problems

By the end of May 2019, PSL had still not installed the Thar equipment at PSL's New York facility. (Id., ¶ 80.) Sound Wellness then entered into a verbal agreement with both Thar and PSL to move the Biomass from Western New York to Thar's facility in Pittsburgh, Pennsylvania, for processing. (Id., ¶ 81.) As part of this verbal agreement, Thar's president, Todd Palcic, told Sound Wellness that Thar was currently processing biomass originating from the same sources as Sound Wellness's biomass, and stated that the current biomass was extracting "beautifully." (Id., ¶ 82.) Sound Wellness relied

on Palcic's representation, and without it, would not have agreed to the processing of its Biomass outside New York State, given the regulatory issues involved in transporting the Biomass to another state. (Id., ¶ 84.) Thar represented to Sound Wellness that, upon receipt of the Biomass, it would test it for contaminants but stated that it did not conduct potency testing on incoming material. (Id., ¶¶ 86-87; Docket No. 40, ¶¶ 128.) Sound Wellness does not allege that Thar knew this statement to be false when it was made or that it was made with any intent of inducing reliance by Sound Wellness.

Ultimately the Biomass was moved to Pittsburgh, Pennsylvania, to be processed by Thar.

### 4. Thar's testing

Upon receipt of the Biomass, Thar tested it for *e.coli* and found that it tested positive. (Id., ¶ 88.) Unbeknownst to Sound Wellness, and contrary to Thar's prior representation, Thar also tested the CBD potency of the Biomass on June 10, 2019. (Id., ¶ 107.) The potency test showed that the Biomass had a CBD content of 5.8% to 6.01%, far lower than that indicated in the NY COA. (Id., ¶ 109.) Thar did not inform Sound Wellness of the result of this June potency test, even though Thar knew that Sound Wellness was relying on the NY COA supplied by PSL. (Id., ¶¶ 128-30.) On June 10, 2019, Thar told Sound Wellness that the Biomass had tested positive for *e.coli* and that it would not process the material at its Pittsburgh facility. (Id., ¶¶ 129, 131.) Sound Wellness alleges that Thar intentionally withheld the potency test result to induce Sound Wellness to continue with processing instead of terminating the contract immediately. (Docket No. 23, ¶ 115.)

### 5. Processing by PSL and testing by Sound Wellness

The Biomass was transferred back to PSL's New York facility on or around July 10, 2019. (Docket No. 40, ¶ 133.) From late August through early September 2019, the Biomass was processed at PSL's facility. (Id., ¶ 136.) At some point during the processing, Sound Wellness became concerned about the ultimate quality of the output of this processing. (Id., ¶ 139.) Sound Wellness therefore tested the Biomass and found exceedingly low potency such that the material had no commercial value. (Id., ¶ 141.) On or about September 30, 2019, Thar told Sound Wellness that it had, in fact, conducted potency testing in June 2019 and disclosed those test results. (Id., ¶¶ 152-53.) Sound Wellness took delivery of the extracted oil from PSL on or about November 6, 2019. (Id., ¶ 188.) Sound Wellness refused to make the second contractual payment of $130,000 to Thar. (Id.)

## B.     Procedural History

Thar sued Sound Wellness in the Court of Common Pleas of Alleghany, Pennsylvania, on May 20, 2020, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Docket No. 1-1 at p.1.) On June 25, 2020, Sound Wellness removed the action to the Western District of Pennsylvania. (Docket No. 1.) On July 1, 2020, Sound Wellness answered Thar's complaint and asserted counterclaims. (Docket No. 2.) On July 15, 2020, Sound Wellness filed a third-party complaint against PSL and Barnhart.  (Docket No. 10.)

Thereafter, Sound Wellness filed amended counterclaims against Thar and an amended third-party complaint against PSL and Barnhart. (Docket Nos. 23, 40.) PSL and Barnhart moved to dismiss Sound Wellness's claims for lack of personal jurisdiction or improper venue. (Docket No. 42.) In the alternative, PSL and Barnhart asked the court to

transfer the case to the Western District of New York. Over Thar's and Sound Wellness's objections, District Judge Marilyn Horan transferred the entire case to this District in the interest of justice. (Docket No. 53, 54.) In transferring the case, the court denied without prejudice PSL's and Thar's motions to dismiss Sound Wellness's amended counterclaims and amended third-party complaint.  On May 21, 2021, both PSL and Thar filed motions to dismiss in this Court. (See Docket Nos. 64, 66.) Sound Wellness opposes both motions.

## III.  DISCUSSION

Both PSL and Thar move to dismiss Sound Wellness's claims pursuant to Rules 12 (b)(6) and 9 (b) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted and for failure to allege fraud with sufficient specificity.

### A.  Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6). "A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." Tradeshift, Inc. v. Smucker Servs. Co., No. 20-CV-3661 (MKV), 2021 WL 4463109, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting Inter-Am. Dev. Bank v. IIG Trade Opportunities Fund N.V., No. 16 CIV. 9782 (PAE), 2017 WL 6025350, at *4 (S.D.N.Y. Dec. 4, 2017) (internal citations and quotations omitted)).

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id.; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the

11

presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

## A. Rule 9 (b)

"Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) by stating the circumstances constituting fraud with particularity." Tradeshift, 2021 WL 4463109, at *4 (citing ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009)). Rule 9 (b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." DiMuro v. Clinique Labs., LLC, 572 F. App'x. 27, 30 (2d Cir. 2014). Put another way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." Tradeshift, 2021 WL 4463109, at *4. Fraudulent intent may be alleged generally, but plaintiffs "are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." Id. (quoting Stephenson v. PricewaterhouseCoopers, LLP, 482 F. App'x 618, 622 (2d Cir. 2012)).

## B. Sound Wellness's Third-Party Claims against PSL and Barnhart

The parties agree that the contract between Sound Wellness and PSL is governed

by New York law.[6] Their briefing cites New York law and neither party contests its application. PSL moves to dismiss Sound Wellness's first and third causes of action, which allege fraud in the inducement and fraud. PSL does not move to dismiss Sound Wellness's breach-of-contract claim.

### 1. Fraudulent Inducement

Sound Wellness alleges that PSL fraudulently induced it to enter contracts with PSL and two other parties to purchase the Biomass, and with PSL to process the Biomass, by making misrepresentations as to (1) the CBD potency of the Biomass and (2) PSL's ability to timely process the Biomass. (Docket No. 40, ¶¶ 206-08, 211-212.) It alleges that, in pre-contract discussions, PSL offered it the NY COA, which misrepresented that the Biomass had a CBD content of around 13.1%. (Id., ¶ 206.) Sound Wellness also alleges that PSL knowingly and falsely stated that Thar's processing equipment would timely be installed at the PSL facility, that PSL could process the Biomass by February 7, 2019, and that PSL could process the Biomass without help from Thar. (Id., ¶ 212.)

PSL argues: (1) that Sound Wellness's fraudulent-inducement claim cannot go

---

[6]     If "[t]he parties' briefs assume that New York substantive law governs the issues ... such implied consent is, of course, sufficient to establish the applicable choice of law." Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 39 (2d Cir. 2009) (quoting Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 514 n.4 (2d Cir. 2001)). See also Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry."); Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.").
        The contract between the parties was formed in New York and provides for the application of New York law. It deals with hemp that was grown in New York and to be processed in New York. Both PSL and Sound Wellness exclusively cite New York law in their arguments, and this Court identifies no public policy against the application of New York law. For all these reasons, this Court will apply New York law to the claims at issue here.

forward because it is duplicative of its breach-of-contract claim; (2) that Sound Wellness has not stated a claim for fraudulent inducement; (3) that Sound Wellness has failed to allege its claims with sufficient particularity; (4) that Sound Wellness has failed to join necessary parties; and (5) that Sound Wellness cannot bring fraud claims individually against Barnhart, because he was acting as an officer of PSL.

### a. Legal Standards

Under New York law, to state a claim for fraudulent inducement a plaintiff must allege: (1) a material misrepresentation or omission of fact, (2) made by the defendant with knowledge of its falsity (3) and an intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104 (2011); see also Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).

Under the enhanced pleading requirements of Rule 9 (b), plaintiffs "must not only allege that the content is false, but 'they must demonstrate with specificity why and how that is so.'" Tradeshift, 2021 WL 4463109, at *5 (quoting Travelex Currency Servs., Inc. v. Puente Ents., Inc., 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020).  Furthermore, plaintiffs "are … required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." President Container Grp., II, LLC v. Systec Corp., 467 F. Supp. 3d 158, 166 (S.D.N.Y. 2020). Plaintiffs may assert a strong inference of fraudulent intent by alleging facts that either (1) show that the defendant had the "motive and opportunity" to commit the alleged fraud, or (2) "constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank., N.A., 459 F.3d 273, 290-91 (2d Cir. 2006).

Under New York law, "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Telecom Int'l Am., Ltd. v. AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001). On the other hand, a plaintiff may maintain parallel contract and tort actions where the allegations "involve misstatements and omissions of present facts, not contractual promises regarding prospective performance." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007) (emphasis added); see also 320 W. 115 Realty LLC v. All Bldg. Constr. Corp., 149 N.Y.S. 3d 28, 29 (App. Div. 2021) (citing Deerfield Comm'n Corp. v. Chesebrough-Ponds, Inc., N.E.2d 1003 (1986)). "Such cause of action enjoys a longstanding pedigree in New York." Capax Discovery, Inc. v. AEP RSD Invs., LLC, 285 F. Supp. 3d 579, 586–87 (W.D.N.Y. 2018) (internal quotation marks and citations omitted).

A party claiming fraud by omission must allege that the defendant had a duty to disclose the omitted information. "New York recognizes a duty by a party to a business transaction to disclose material facts in certain circumstances, including where the party has made a partial or ambiguous statement; when the parties stand in a fiduciary or confidential relationship with each other; and where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 244 (S.D.N.Y. 2006) (citing Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

### b. The assertions in the NY COA support a separate cause of action for fraudulent inducement.

PSL argues that Sound Wellness's claim for fraudulent inducement is duplicative of its breach-of-contract claim. It argues that, because the NY COA represented a CBD content of 13% and the contract then guaranteed a final CBD content of at least 10%, the allegedly fraudulent COA is duplicative of the contract. But this argument does not comport with New York precedent. It is true that "a fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, *i.e.,* when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." First Bank of Americas v. Motor Car Funding, Inc., 690 N.Y.S.2d 17, 20–21 (App. Div. 1999) (citing Gordon v. Dino De Laurentiis Corp., 529 N.Y.S.2d 777 (App. Div. 1998)). But "a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." Id. (citing Non–Linear Trading Co. v. Braddis Assocs., Inc., 675 N.Y.S.2 5 (App. Div. 1998)). "[I]f a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim." Id. (citing RKB Enters Inc. v. Ernst & Young, 582 N.Y.S.2d 814 (App. Div. 1992)). "Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." Id. (citing Deerfield Comm'n, 510 N.Y.S.2d 88).

Here, Sound Wellness's claim goes beyond a mere claim that PSL "never intended to provide CBD oil of at least 10%" and concerns a material misrepresentation of a present

fact presented on an allegedly false certificate of analysis. The fraudulent inducement and contract claims are not duplicative, and this argument by PSL is unavailing.

### c. Sound Wellness states a claim for fraudulent inducement.

PSL also argues that Sound Wellness has failed to state a claim for fraudulent inducement. This Court finds, to the contrary, that Sound Wellness has sufficiently alleged that PSL made a material misrepresentation, with knowledge of its falsity and intent to induce Sound Wellness to enter a contract, on which Sound Wellness reasonably relied, and that Sound Wellness suffered harm as a result. See Mandarin Trading, 16 N.Y.3d at 178.

Sound Wellness alleges that the NY COA's statement that the Biomass had a CBD content of 13% was a material misrepresentation, because the Biomass actually had a much lower CBD content. Sound Wellness alleges that PSL knew that the sample was not indicative of the potency of the Biomass as a whole because PSL had chosen an uncharacteristically potent sample to test. (Docket No. 40, ¶¶ 77-81.)

As for intent, Sound Wellness alleges that PSL intended for the NY COA to misrepresent the potency of the Biomass, so that Sound Wellness would buy the Biomass. (Id., ¶¶ 80, 82.) To plead intent with adequate specificity, a plaintiff can raise a strong inference of fraudulent intent by alleging specific facts showing the defendants' "motive and opportunity to commit fraud" or that "constitute strong circumstantial evidence of conscious misbehavior or recklessness." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 634 (2d Cir.1996). Here, Sound Wellness alleges that PSL desired to sell it the Biomass, and had the opportunity to commit fraud by asserting that the results from a nonrepresentative sample represented the whole. This Court finds, therefore, that

17

Sound Wellness has sufficiently alleged intent. Id.

As for reasonable reliance, New York law requires sophisticated investors to protect themselves by investigating the details of the transactions and the businesses they are acquiring.  Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC, 450 F. Supp. 3d 358, 378 (S.D.N.Y. 2020) (citing Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005) (internal citations and quotation marks omitted). Even sophisticated business parties, however, may rely on "matters held to be peculiarly within defendants' knowledge" when they have no independent means for ascertaining the truth." Id. (quoting Terra Sec. ASA Konkursbo v. Citigroup, Inc., 820 F. Supp. 2d 541, 548 (S.D.N.Y. 2011)).

Even assuming that Sound Wellness was a "sophisticated party," it has sufficiently alleged that it was reasonable for it to rely on the NY COA for a test of material that was in PSL's possession at the time of the testing.  Finally, as to damages, Sound Wellness alleges that it entered into three contracts to buy Biomass based on the information in the NY COA, and that after processing, the resultant oil had no commercial value.

PSL argues that Sound Wellness's claim regarding the NY COA is essentially a claim for fraud by omission. It claims, therefore, that Sound Wellness must allege that it had a duty to disclose the nonrepresentative nature of the sample. This Court disagrees that this is an omission claim. Rather, Sound Wellness is alleging that the NY COA was a materially false statement as to the Biomass it was considering buying. Regardless, under New York law, a duty to disclose arises where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Sofi Classic, 444 F. Supp. 2d at 244. Here, Sound

Wellness alleges that PSL had superior knowledge of the Biomass's overall potency, and of the potency of the sample it sent for testing, that this knowledge was not readily available to Sound Wellness, and that PSL knew that Sound Wellness was acting on the basis of mistaken knowledge. This suffices to allege that PSL had a duty to disclose the truth to Sound Wellness.  Id.

For all the foregoing reasons, this Court finds that Sound Wellness has adequately pleaded the elements of its fraudulent inducement claim regarding the NY COA.

> **d.  Sound Wellness's fraudulent inducement claim premised on PSL's statements regarding its ability to process the Biomass is not duplicative, except in its promises of timeliness.**

Sound Wellness also alleges that PSL's statements that it was capable of processing the Biomass, and that it could do so by January 2019, constitute fraudulent inducement. PSL's primary argument regarding this claim is that it is fatally duplicative of Sound Wellness's breach-of-contract claim. (Docket No. 64-1 at p. 11.)

As stated above, "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties," the independent fraud claim cannot stand. Telecom Int'l, 280 F.3d at 196. But a plaintiff may maintain parallel contract and tort actions where the allegations "involve misstatements and omissions of present facts, not contractual promises regarding prospective performance." Merrill Lynch, 500 F.3d at 184 (emphasis added).

Here, this Court discerns two elements to PSL's statements. As to PSL's claim that it could complete the work by a certain date, this is clearly duplicative of the contract,

which promised completion of the processing by the same dates as the allegedly fraudulent statements.  (See PSL Agreement, Docket No. 23-3 at p. 1.)

As to PSL's claim that it would be able to perform the processing on Thar equipment, however, Sound Wellness alleges that during the negotiation process in November 2018, before the PSL Agreement was signed, PSL represented that it "was capable of providing biomass extraction services with respect to the Biomass using the Thar Equipment." (Docket No. 40, ¶ 64.) It alleges that PSL knew—through its joint venture with Thar—that this was false. (Id., ¶ 65.) The contract does not address the state of PSL's facility or the installation of Thar's equipment there. In fact, it does not mention Thar or the processing equipment at all. This Court finds that this part of the fraudulent inducement claim survives because it is not fatally duplicative of Sound Wellness's breach of contract claims.

PSL also argues that Sound Wellness has failed to state its claim with particularity. In making this argument, PSL cites not Rule 9 (b) but the standard for pleading a fraud by omission. The claim here does not appear to be for an omission but for a straightforward misrepresentation. Even if Sound Wellness were required to allege PSL's duty to disclose the truth, however, this Court finds that Sound Wellness has alleged facts making it plausible that PSL had access to information regarding its ability to process that Sound Wellness had no access to. See Sofi Classic, 444 F. Supp. 2d at 244. In light of this circumstance, this Court finds that PSL had a duty to disclose the fact that it was not able, in fact, to process the Biomass on Thar equipment.

This Court finds, therefore, that Sound Wellness has sufficiently alleged fraudulent inducement in PSL's November 2018 statements regarding its ability to process the

Biomass on Thar equipment, but not in the allegedly fraudulent statement that the work would be done by the same dates as were promised in the contract. See Cohen, 25 F.3d at 1172.

### e. PSL is not required to name Be Well or Donald Spoth farms as parties.

PSL argues that the absence of two parties from whom Sound Wellness bought portions of the Biomass, Be Well and Donald Spoth Farms, dooms Sound Wellness's fraudulent inducement claim.

A party is required to be named in a case where because of that person's absence this Court cannot accord complete relief among the existing parties, or that person claims an interest relating to the subject of the action such that disposing of the action in the person's absence may: "(i) as a practical matter impair or impede the person's ability to protect the interest;" or "(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). This is a defense that can be raised by motion. Fed. R. Civ. P. 12(b)(7). See also Allegany Cap. Enters., LLC v. Cox, No. 19-CV-160S, 2021 WL 1807868, at *3 (W.D.N.Y. May 6, 2021)

Here, PSL has not brought a motion under Rule 19, nor does it argue that Sound Wellness's claim cannot go forward in the absence of the two other parties with whom Sound Wellness contracted based on PSL's false representations. As this Court reads the complaint, there is no claim alleged against either Be Well or Donald Spoth Farms, such that they have an interest that would be unprotected if this action went forward without them. This Court finds PSL's argument regarding necessary parties to be without merit.

21

### 2.  Fraud

As its third cause of action against PSL, Sound Wellness alleges that PSL committed fraud when it failed to disclose the result of a potency test conducted by Thar in June 2019 that showed that the CBD potency of the Biomass was much lower than the 13% in the NY COA or the 10% minimum guaranteed by the PSL Agreement. (Docket No. 40, ¶¶ 231-32.)

PSL argues that this claim is duplicative of Sound Wellness's breach of contract claim, and that Sound Wellness has not alleged that it reasonably relied on PSL's silence or that PSL had a duty to disclose the test result. (Docket No. 64-1 at pp. 12-14.)

### a.  Legal Standard

Under New York law, "to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." President Container Grp., 467 F. Supp. 3d at 165 (quoting Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1373 (1996)).

In terms of reliance, New York courts are generally skeptical of claims of reliance asserted by "sophisticated businessmen engaged in major transactions [who] enjoy access to critical information but fail to take advantage of that access." Allegheny Energy, 500 F.3d at 181 (citing Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 737 (2d Cir. 1984)). This is based on longstanding precedent that "[w]hen the means of knowledge are open and at hand, or furnished to the purchaser or his agent, and no effort

is made to prevent the party from using them, … he will not be heard to say that he has been deceived to his injury by the misrepresentations of the vendor." <u>Shappirio v. Goldberg</u>, 192 U.S. 232, 241–42, 24 S. Ct. 259, 261, 48 L. Ed. 419 (1904). <u>See also</u> <u>Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.</u>, 731 F.2d 112, 123 (2d Cir. 1984); <u>Frigitemp Corp. v. Fin. Dynamics Fund, Inc.</u>, 524 F.2d 275, 282 (2d Cir. 1975).

Where a plaintiff seeks to show fraud by omission, it must also plead that the defendant had a duty to disclose the concealed fact. <u>Allegheny Energy</u>, 500 F.3d at 181 (citing <u>Congress Fin. Corp. v. John Morrell & Co.</u>, 790 F. Supp. 459, 472 (S.D.N.Y.1992)). "New York recognizes a duty by a party to a business transaction to disclose material facts in certain circumstances, including where the party has made a partial or ambiguous statement; when the parties stand in a fiduciary or confidential relationship with each other; and where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." <u>Sofi Classic</u>, 444 F. Supp. 2d at 244.

### b. Sound Wellness fails to state a claim for fraud in PSL's failure to disclose Thar's June 2019 test results.

Sound Wellness alleges that PSL committed fraud when it withheld from Sound Wellness the fact that Thar had performed potency testing and then failed to disclose the results of that test. PSL argues that it had no duty to disclose any potency-related information and that Sound Wellness did not reasonably rely on its silence regarding Thar's testing.

This Court finds that Sound Wellness has not pleaded that PSL had a duty to disclose Thar's test result. A duty to disclose, absent a fiduciary relationship—which Sound Wellness does not allege—arises only in limited circumstances. <u>Id.</u> Although, this

Court finds that Sound Wellness plausibly alleged that PSL had exclusive access to information regarding the accuracy of the NY COA *before* the contract was formed, this is no longer the case after the formation of the PSL agreement. The "Standard Terms and Conditions" of the PSL Agreement contain a "Right of Inspection and Testing," pursuant to which Sound Wellness had reasonable access to all products (which, as defined in the Agreement, included the Biomass) and the right to designate someone to obtain a sample and arrange for independent laboratory analysis, at its sole expense. (Docket No. 23-3 at p. 7.) Sound Wellness nowhere alleges that it was prevented from accessing the Biomass to take a sample and perform testing. It has thus failed to sufficiently allege that PSL has "superior knowledge" that was not available to it. See Sofi Classic, 444 F. Supp. 2d at 244

Because Sound Wellness has not pleaded a duty on PSL's part to disclose Thar's test result, this Court will dismiss without prejudice Sound Wellness's fraud claim based on PSL's failure to disclose that result.

### 3.  Sound Wellness's claims against Barnhart may go forward.

PSL argues that Barnhart must be dismissed as a defendant because all the actions he allegedly took were as an official of PSL. Sound Wellness argues that corporate officers can be held liable for fraudulent statements, even when they were made in the officers' role as officers of a corporation or LLC.

Sound Wellness's position is correct. Under New York law, "members of limited liability companies, such as corporate officers, may be held personally liable if they participate in the commission of a tort in furtherance of company business." Bd. of Managers of Beacon Tower Condo. v. 85 Adams St., LLC, 25 N.Y.S.3d 233, 237 (App.

Div. 2016) (quoting <u>Rothstein v. Equity Ventures</u>, 750 N.Y.S.2d 625 (App. Div. 2002)). This Court therefore declines to dismiss Barnhart on this basis.

### 4.   Conclusion

This Court finds that Sound Wellness has stated a claim for fraudulent inducement because it has sufficiently alleged that PSL misrepresented both the potency of the Biomass and its ability to process the Biomass during its November 2018 discussions with Sound Wellness. PSL's motion to dismiss Sound Wellness's first cause of action, for fraudulent inducement, will therefore be denied.

Because Sound Wellness has failed to sufficiently allege that PSL had a duty to inform it of Thar's June 2019 test result, this Court will dismiss without prejudice Sound Wellness's fraud claim against PSL.

### C.   Thar's Motion to Dismiss Sound Wellness's Counterclaims

Sound Wellness brings three counterclaims against Thar. First, it alleges that Thar breached the Thar Agreement when it withheld its June 2019 test result and proceeded to process the Biomass into what it knew would be worthless oil. Second, in the alternative, Sound Wellness claims that Thar committed fraud when it knowingly withheld its June test result, thereby inducing Sound Wellness to allow Thar to proceed with processing. Third, again in the alternative, Sound Wellness alleges that Thar is liable for "constructive fraud in contract" because it negligently failed to disclose the June test result despite its duty to do so.  Sound Wellness seeks damages and rescission of its contract with Thar.

Thar moves to dismiss all three of Sound Wellness's causes of action against it and urges dismissal of Sound Wellness's demand for rescission of the contract because

Sound Wellness has failed to state a claim for relief. Sound Wellness opposes Thar's motion.

The Thar agreement states, and the parties agree, that Pennsylvania law controls the contract between them. (See "Thar Agreement," Docket No. 23-5 at p. 10; Docket No. 66-3 at pp. 9-20; Docket No. 71 at pp. 7-18.) This Court finds it proper to apply Pennsylvania law to this dispute.[7]

### 1. Breach of Contract

Thar argues first that Sound Wellness fails to state a claim for breach of contract. Sound Wellness alleges that Thar breached the Thar Agreement by failing to produce "extracted oil" of high quality and of commercial value (Docket No. 23, ¶¶ 131-32, 144); by falsely claiming it would not test the Biomass and then testing it; and by failing to disclose the test result indicating that the extracted oil would have no commercial value. (Id., ¶ 141.)

The Thar Agreement contains no warranty that the resulting oil would be of any specific potency. Sound Wellness acknowledges this fact but argues that the term "extracted oil" in the contract actually means "high-quality and commercially valuable" extracted oil. (Id., ¶ 142.) It is this implied term that Sound Wellness argues Thar breached

---

[7]     "[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)). See also Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.").

        Because the parties both agreed to a Pennsylvania choice-of-law provision (see Docket No. 23-5 at p. 10) and briefed their arguments with the assumption that Pennsylvania law applies, this Court will evaluate Plaintiffs' fraud and contract claims under Pennsylvania law. Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc, No. 20 CIV. 9993 (KPF), 2021 WL 5909976, at *13 (S.D.N.Y. Dec. 10, 2021) (citing Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (the parties' "implied consent ... is sufficient to establish choice of law").
.

when it supplied low-quality oil. Sound Wellness also argues that Thar's June 2019 testing of the Biomass and failure to disclose its test result was a breach of the duty of good faith and fair dealing implicit in the Thar agreement.

### a. This Court will not imply the terms "high quality" and "commercially valuable."

Sound Wellness argues that this Court should apply Pennsylvania's "doctrine of necessary implication" to the Thar agreement.

Pennsylvania's doctrine of necessary implication provides that

in the absence of an express provision, the law will apply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do *in order to carry out the purpose for which the contract was made* and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

Glassmere Fuel Serv., Inc. v. Clear, 2006 PA Super 113 (emphasis added). See also Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716, 720 (1996) (en banc), appeal denied, 546 Pa. 645, 683 A.2d 883 (1996) (citing Frickert v. Deiter Bros. Fuel Co., Inc., 347 A.2d 701 (1975)).

However, "[a] court may imply a missing term in a parties' contract only when it is necessary to prevent injustice and it is *abundantly clear* that the parties intended to be bound by such term." Solomon v. U.S. Healthcare Sys. of Pa., Inc., 2002 PA Super 110 (2002) (citation omitted) (emphasis added). See also Slater v. Pearle Vision Ctr., Inc., 546 A.2d 676, 679 (Pa. Super. Ct. 1988). In Slater, for example, which Sound Wellness cites to support its argument, the Pennsylvania Superior Court held that the terms of a commercial lease, while not specifically requiring the lessee to occupy the premises it was leasing, nevertheless "suggest[ed] that actual occupancy and use of the premises by [lessee] was in the contemplation of the parties when they executed the lease." Slater,

546 A.2d at 680.

In most cases, however, "[w]here the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement." Glassmere, 2006 PA Super 113, at ¶ 10.

Sound Wellness argues that this Court should imply the terms "high-quality" and "commercially viable" into the contract, such that Thar's provision of low-quality, nonviable oil was a breach. This Court declines to do so. The Thar Agreement makes no mention of the CBD content or potency of the finished oil. The only quality specifications in the Thar Agreement are moisture content and particle size. (Docket No. 23-5 at p. 2.) In terms of quality control, Sound Wellness is given 5 days within receipt of the goods to give notice of damage or defects. Tellingly, the contract disallows claims for shrinkage, expansion, deformity, or rupture of material—all terms describing physical aspects of the material, not its inherent potency. (Id. at p. 7.) The presence of these terms suggests that CBD potency simply was not a category either party was considering in forming this contract.[8] In contrast to Slater, where the terms "occupancy" and "vacancy" were used frequently in the lease, the Thar Agreement does not refer to the quality of the finished oil. To the contrary, it states that "CFM [customer furnished material] certification and quality are the responsibility of Buyer." (Id.)

---

[8] The statutory canon of *ejusdem generis* supports this interpretation. "*Ejusdem generis* is Latin for 'of the same kind.' When a law lists classes of persons or things, this concept is used to clarify such a list. For example, if a law refers to automobiles, trucks, tractors, motorcycles, and other motor-powered vehicles, a court might use *ejusdem generis* to hold that such vehicles would not include airplanes, because the list included only land-based transportation." https://www.law.cornell.edu/wex/ejusdem_generis, accessed 1/10/2022 at 1:48 p.m. Applying this principle here, if a contract lists exterior physical aspects of an agricultural product, it can be inferred that potency of the oil contained within the product was not intended to be included in that category.

28

Sound Wellness argues that it entered this contract under unfavorable market conditions and that Thar used its advantage to refuse to negotiate other terms. Sound Wellness states that it was able to gain only three additional terms: that Thar would have one employee on site during the extraction of the Biomass; that a machine issue causing a 15-day delay would permit Sound Wellness to terminate the agreement; and that Sound Wellness would have the right to a weekly inspection of the extraction facility. (Id. at p. 11.) But simply because Sound Wellness was not able to negotiate the inclusion of a CBD-potency guarantee in the agreement does not mean that this Court should now supply that term. Unlike in Slater, where the court concluded that it had found "ample evidence in the lease" that the parties intended for the lessee to occupy the premises, the Thar Agreement contains no suggestion, let alone the requisite "abundant clarity," that the parties intended Thar to guarantee the quality of the finished oil. See Glassmere, 2006 PA Super 113. In fact, given that the Thar Agreement provides that Sound Wellness maintained control of and ownership of the product it supplied, it is unclear how Thar could have processed Sound Wellness's low-quality Biomass (as evidenced by the June 2019 test result of under 6% potency) into high-quality oil.

This Court declines to imply the terms "high-quality" and "commercially valuable" to the term "extracted oil" in the Thar Agreement. Thar's failure to provide high-quality or commercially valuable oil therefore cannot constitute a breach of the Thar Agreement.

### b. Sound Wellness does not state a claim for breach of the implied duty of good faith and fair dealing.

Thar argues that Sound Wellness's breach-of-contract claim also fails because the contract contained no promises that Thar either would or would not test the Biomass. This Court agrees.

Sound Wellness alleges that "in response to a direct question about testing, Thar expressly stated to Sound Wellness that Thar did not conduct potency (i.e. CBD content testing) on incoming material like the Biomass." (Docket No. 23, ¶ 87.) Sound Wellness does not allege who made this statement or when it was made, but from its placement in the complaint, it appears to have been made in June 2019, around the time that the Biomass was transported to Thar's Pittsburgh facility. (See id., ¶¶ 81-87.)  It was made, therefore, several months *after* the signing of the Thar Agreement on March 1, 2019. (See Docket No. 23-5 at p. 2.)

Sound Wellness's argument is not that Thar's June 2019 statement was an oral modification of a term of the contract, such that its subsequent testing breached that contract. Rather, it argues that, given Thar's implied duty to supply "high-quality" oil, its proceeding with processing when it knew that the oil would not be of high quality breached the implied covenant of good faith and fair dealing.

This argument fails, first, because this Court declines to find that Thar was obligated by the Thar Agreement to supply "extracted oil" of any specific quality or CBD content. This Court therefore cannot conclude that Thar had any implied duty to alert Sound Wellness regarding the quality of the oil at any point during the processing.

But this argument also fails as a matter of law, because Pennsylvania courts permit independent actions for a breach of the duty of good faith only in extremely limited circumstances. Pennsylvania courts generally find that the duty of good faith and fair dealing is implied in every contract. Hordis v. Cabot Oil & Gas Corp., No. 3:19-CV-296, 2020 WL 2128968, at *4 (M.D. Pa. May 5, 2020) (citing Herzog v. Herzog, 887 A.2d 316, 317 (Pa. Super. Ct. 2005)). But Pennsylvania courts are "relucta[nt] to recognize an

independent claim for breach of that duty—sounding in contract or otherwise—except in very narrow situations: specifically, relationships between franchisor and franchisee, insurer and insured, and (sometimes) employer and employee." Id. (citing Creeger Brick & Bldg. Supply, Inc., 560 A.2d 151, 154 (Pa. Super. Ct. 1989)).

The implied duty of good faith and fair dealing "informs the meaning of existing terms but cannot supply new ones." Hordis 2020 WL 2128968, at *4. Here, Sound Wellness is attempting to use the implied duty to supply a new term, one that requires Thar to disclose any knowledge it obtains regarding the CBD content of Sound Wellness's Biomass. This theory goes beyond discerning the meaning of existing terms in the contract and supplies a new term, something this Court declines to do. See id. Consequently, Sound Wellness's claim must be dismissed.

### 2. Fraud

In the alternative to its breach-of-contract claims, Sound Wellness alleges that Thar committed fraud when, with knowledge of PSL's prior fraudulent statement that the Biomass had a certain potency, it told Sound Wellness that it would not test the oil, then did test it and did not reveal the low quality of the oil disclosed by the test or contradict PSL's statements regarding potency that it knew Sound Wellness was relying on. (Docket No. 23, ¶ 149.)

### a. Legal Standards.

The elements of fraudulent misrepresentation in Pennsylvania are: (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness on whether it is true or false, (4) intending to mislead another into relying on it, (5) justifiable reliance on the misrepresentation, and (6)

the resulting injury was proximately caused by the reliance. <u>Khalil v. Williams</u>, 2021 PA Super 3 (2021).

Fraud by omission is actionable "only where there is an independent duty to disclose the omitted information." <u>Gnagey Gas & Oil Co. v. Pa. Undergrnd. Storage Tank Indemnification Fund</u>, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013) (<u>citing</u> <u>Est. of Evasew</u>, 584 A.2d 910, 913 (Pa. Super. Ct. 1990)). In the absence of an independent disclosure duty, "nondisclosure is not fraudulent." <u>Gnagey Gas</u>, 82 A.3d 485 at 502. "[S]uch an independent duty exists where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking disclosure … in order to demonstrate the existence of a fiduciary relationship, the plaintiff must show a relationship involving trust and confidence; and that the proof must show the confidence reposed by one side and the domination and influence exercised by the other." <u>Est. of Evasew</u>, 526 584 A.2d at 913 (citing <u>City of Harrisburg v. Bradford Tr. Co.</u>, 621 F. Supp. 463 (D. C. Pa., 1985)). <u>See also</u> <u>Sunquest Information Sys. v. Dean Witter Reynolds, Inc.</u>, 40 F.Supp.2d 644, 656–57 (W. D. Pa.1999) ("Under Pennsylvania law, a duty to speak or disclose information normally only arises when there is a fiduciary or confidential relationship between the parties.").

A duty to disclose can also arise "[i]f the fact concealed is peculiarly within the knowledge of one party and of such a nature that the other party is justified in assuming its nonexistence." <u>Servis One, Inc. v. OKS Grp., LLC</u>, 528 F. Supp. 3d 359, 370 (E.D. Pa. 2021) (citing <u>Fox's Foods, Inc. v. Kmart Corp.</u>, 870 F. Supp. 599, 609 (M.D. Pa. 1994)). But such a relationship does not arise in a typical contract setting unless "one party surrenders substantial control over some portion of its affairs to the other." <u>Gaines v.</u>

Krawczyk, 354 F. Supp. 2d 573, 586 (W.D. Pa. 2004) (citing Sunquest, 40 F.Supp.2d at 656). "Similarly, the duty does not arise where the parties have or can be assumed to have equal knowledge to the information available." Gaines, 354 F. Supp. 2d at 586 (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 612 (3d Cir. 1995)).

> ### b. Sound Wellness fails to sufficiently allege that Thar had a duty to disclose the June 2019 test result.

Thar argues that Sound Wellness fails to state a claim for fraud because Sound Wellness's has not alleged any duty to disclose on Thar's part or that Sound Wellness's reliance on its silence was reasonable. This Court finds that Sound Wellness has failed to sufficiently allege that Thar had a duty to disclose.

The parties dispute whether this issue was timely raised, but this Court finds that it was timely raised and has been sufficiently briefed. Sound Wellness states facts that appear to refer to Thar's duty in its Amended Counterclaims. (Docket No. 23, ¶¶ 150-51, 156-58.) Thar raised the issue clearly in its reply, and Sound Wellness had a chance to address the issue in its sur-reply. This Court therefore considers the issue to have been raised and briefed.

This Court does not find that Sound Wellness has sufficiently alleged a duty to disclose on Thar's part. Even assuming that Sound Wellness was justified in relying on Thar's statements regarding testing and processing, Sound Wellness has not sufficiently alleged that knowledge of the Biomass's CBD content was exclusively in Thar's hands. Both contracts specify that ownership of the Biomass and responsibility for its quality belong to Sound Wellness. And both contracts permit Sound Wellness reasonable access to the Biomass. Sound Wellness argues that it has alleged that PSL and Thar "maneuvered" to transfer the Biomass to Pittsburgh and that the Biomass was "kept

exclusively in PSL- or Thar-controlled facilities at all times prior to processing." (Docket No. 76 at p. 6.) What Sound Wellness does not allege is that it was prevented from accessing the Biomass or performing its own testing. Absent an allegation that Sound Wellness was somehow prevented from accessing or testing the Biomass, this Court cannot find that the fact of the Biomass's actual potency, as revealed in the June 2019 test result, was "peculiarly within the knowledge" of Thar such that Thar had a duty to disclose this fact to Sound Wellness. See Servis One, 528 F. Supp. 3d at 370.

For these reasons, this Court finds that Sound Wellness has failed to sufficiently allege that Thar had a duty to disclose the June test result and its claim fails on this basis.

### 3. Constructive Fraud in Contract

As its third cause of action, Sound Wellness alleges that Thar committed constructive fraud in contract by negligently failing to inform Sound Wellness about the June 2019 testing.

#### a. Legal Rules

In Pennsylvania, "a constructive fraud claim requires a false statement (or omission) on which the other party acts to his injury, without the element of dishonest intent." Bucci v. Wachovia Bank, N.A., 591 F. Supp. 2d 773, 784 (E.D. Pa. 2008) (citing United States v. Whyel, 19 F.2d 260, 263 (W.D. Pa. 1927); Charleroi Lumber v. Sch. Dist., 334 Pa. 424, 6 A.2d 88, 91 (1939) (defining constructive fraud as "a breach of duty which has a tendency to deceive others and operate to their injury, even though there is no vicious intent"). As with fraud, to state a claim for constructive fraud by omission, a plaintiff must allege a relationship between the parties that would trigger the defendant's duty to speak. Bucci, 591 F. Supp. 2d at 784.

### b. Sound Wellness fails to state a claim for constructive fraud in contract.

As with its fraud claims, here, this Court finds that Sound Wellness has failed to sufficiently allege a relationship between itself and Thar, or Thar's exclusive access to information, that created a duty on Thar's part to disclose information related to the potency of the Biomass. For this reason, Sound Wellness's constructive fraud claim against Thar will be dismissed.

### 4. Gist of the Action Doctrine

Thar alleges that Pennsylvania's "gist of the action" doctrine precludes Sound Wellness from bringing claims for both breach of contract and fraud based upon the same set of facts. Sound Wellness argues that its fraud claim is distinct from its breach-of-contract claim and that, in any event, by pleading its contract and fraud claims "in the alternative" it has avoided this outcome.

Because this Court finds that Sound Wellness has failed to state claims against Thar for either breach of contract or fraud, it will not address the question of whether Sound Wellness's fraud claims are duplicative of its contract claims.

### 5. Contract Recission Based on Misrepresentation.

Thar argues that Sound Wellness's request for the equitable remedy of contract rescission is improper because Sound Wellness is also seeking damages.

While the doctrine of election of remedies prohibits a party from seeking inconsistent relief, and "a party must choose at some point whether to seek rescission of the contract or to seek damages under the contract," Umbelina v. Adams, 2011 PA Super. 257 (2011), at the pleading stage, a party "may generally simultaneously plead and attempt to prove alternative causes of action seeking damages through inconsistent

remedies supported by the same factual scenario." <u>Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.</u>, 217 A.3d 1227, 1239–40 (Pa. 2019). It was not improper, in theory, for Sound Wellness to simultaneously seek both damages and rescission.

But Pennsylvania law holds that the "only grounds upon which equity will permit rescission of an executed contract are fraud, mistake, failure of consideration, and quia timet." <u>Umbelina v. Adams</u>, 2011 PA Super 257, 34 A.3d 151, 158–59 (2011) (citing <u>New–Com Corp. v. Est. of Gaffney</u>, 72 B.R. 90, 93–94 (Bankr. W.D. Pa.1987)). Because this Court finds that Sound Wellness has failed to state a claim for fraud against Thar, it will dismiss the demand for contract rescission as moot.

### D. Leave to Amend

Sound Wellness requests the opportunity to amend its Amended Third-Party Complaint and Amended Counterclaims if this Court grants either PSL's or Thar's motion to dismiss. District courts have broad discretion to grant a party leave to amend its pleadings, and the federal rules dictate that courts "freely give leave when justice so requires."  Fed. R. Civ. P. 15 (a)(2); <u>see also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962); <u>Ellis v. Chao</u>, 336 F.3d 114, 127 (2d Cir. 2003). For this reason, this Court will grant Sound Wellness leave to amend both its Amended Third-Party Complaint and its Amended Counterclaims.

### IV.   CONCLUSION

Because Sound Wellness has stated a claim against PSL for fraudulent inducement, PSL's motion to dismiss Sound Wellness's first cause of action will be denied.  But because Sound Wellness has not stated a claim against PSL for fraud, PSL's motion to dismiss Sound Wellness's third cause of action will be granted with leave to

amend. (Docket No. 64.)

Because Sound Wellness has not stated a claim for breach of contract, fraud, or constructive fraud in contract against Thar, Thar's motion to dismiss all of Sound Wellness's amended counterclaims (Docket No. 66) will be granted with leave to amend.


**V.  ORDERS**

IT HEREBY IS ORDERED, that Third Party Defendants' PSL and Barnhart's Motion to Dismiss (Docket No. 64) is DENIED IN PART and GRANTED IN PART. It is DENIED as to Sound Wellness's fraudulent inducement claim (Count 1) and GRANTED as to Sound Wellness's fraud claim (Count 3).

FURTHER, that Counter-Defendant Thar's Motion to Dismiss (Docket No. 66) is GRANTED.

FURTHER, that Sound Wellness's request for leave to amend its Amended Third-Party Complaint against PSL is GRANTED. Sound Wellness may file a Second Amended Third-Party Complaint within 14 days of the entry date of this decision. If such is filed, Defendant PSL shall have 28 days from the entry date of this decision within which to respond. If none is filed, Sound Wellness's third cause of action for fraud will be DISMISSED without further order of this Court and PSL shall file its answer to Sound Wellness's remaining claims within 28 days of the entry date of this decision.

FURTHER, that Sound Wellness's request to amend its Amended Counterclaims against Thar is GRANTED. Sound Wellness may file Second Amended Counterclaims within 14 days of the entry date of this decision. If such are filed, Thar shall have 28 days from the entry date of this decision within which to respond. If none are filed, Sound

Wellness's Amended Counterclaims (Docket No. 23) will be DISMISSED without further order of this Court.

      SO ORDERED.

Dated:      January 18, 2022
             Buffalo, New York

                                     s/William M. Skretny
                               WILLIAM M. SKRETNY
                       United States District Judge