UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THAR PROCESS, INC.,

        Plaintiff/Counter-Defendant,

    v.

SOUND WELLNESS, LLC,

        Defendant/Counterclaimant/Third-
        Party Plaintiff,

    v.

PLANT SCIENCE LABORATORIES, LLC, AND
MICHAEL BARNHART,

        Third-Party Defendants/Third-
        Party-Defendant Claimants.

**DECISION AND ORDER**

21-CV-422S

## I. INTRODUCTION

Before this Court is the motion of Thar Process, Inc., a hemp processor, to dismiss the Second Amended Counterclaims brought against it by Defendant Sound Wellness, LLC. Sound Wellness alleges that Thar breached the contract between the parties when it processed Sound Wellness's hemp into low-quality, low-potency CBD oil.[1] Because this Court finds that Sound Wellness has stated a claim for relief, it will deny Thar's motion.

## II. BACKGROUND

This Court assumes the truth of the following factual allegations contained in Sound Wellness's Second Amended Counterclaims. (Docket No. 78.) See Hosp. Bldg.

---

[1] Also pending is Thar's motion to dismiss the claims asserted against it by Third-Party Defendants Plant Science Laboratories and Michael Barnhart. (Docket No. 98.) This Court will resolve that motion in a separate decision.

Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).[2]

## A.      Facts

This case concerns a complicated set of arrangements that Sound Wellness and its parent company, nonparty Jushi, Inc., entered in an attempt to obtain CBD oil in New York State.

In one contract, Sound Wellness contracted with Third-Party Defendant PSL, a Buffalo, New York, company, to purchase hemp biomass and have it processed into CBD oil. In another contract, Sound Wellness contracted with Thar, a Pittsburgh, Pennsylvania, company, for the processing of the biomass Sound Wellness bought from PSL.

Thar and PSL were engaged in a joint venture, nonparty Thar Extracts NY, LLC, pursuant to which Thar would provide hemp extraction technology to the joint venture, and PSL would provide necessary licenses and use the joint venture as its exclusive hemp processor. (Docket No. 78, ¶¶ 18, 22.) Thar Extracts, LLC, did not enter any contracts with Sound Wellness. Thar and PSL were aware of each other's contracts with Sound Wellness.

### 1.  The First Contract: Sound Wellness contracts with PSL.

---

[2]      In determining whether dismissal is warranted, a court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, …, and [4] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Healthnow New York Inc. v. Catholic Health Sys., Inc., No. 14-CV-986S, 2015 WL 5673123, at *2–3 (W.D.N.Y. Sept. 25, 2015) (Skretny, J.) (citing In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356–357 (S.D.N.Y. 2003) (footnotes omitted), aff'd 396 F.3d 161 (2d Cir. 2005), cert. denied, 546 U.S. 935, 126 S. Ct. 421, 163 L. Ed. 2d 321 (2005)).

The first contract concerned Sound Wellness's purchase of both unfinished hemp biomass ("the Biomass") and crude CBD oil from PSL ("the PSL Agreement"). Before Sound Wellness entered the PSL Agreement, PSL's president Michael Barnhart provided a certificate of analysis indicating that the Biomass Sound Wellness was purchasing had a CBD content of 13.1%. (Docket No. 78, ¶ 31; see also Docket No. 78-2.) Sound Wellness alleges that Thar knew that Sound Wellness had received the certificate and was relying on it when Sound Wellness entered the PSL Agreement. (Id., ¶ 36.)

In January 2019, Sound Wellness entered the PSL Agreement to purchase the Biomass, to have the Biomass processed into CBD oil, and to have the crude oil it purchased processed into CBD soft gels and tinctures. (Docket No. 78-3 at p. 2.) Although this was not stated in the PSL Agreement, Barnhart informed Sound Wellness that the Biomass would be processed at PSL's Buffalo facility, under PSL's New York hemp processor license, using Thar's not-yet-installed equipment. (Id., ¶¶ 16, 27.) Thar, however, did not possess a New York hemp processor license. (Id., ¶ 29.) The PSL Agreement provided that processing would be completed by February 15, 2019. (Id., ¶ 41, see also Docket No. 78-3 at p. 3.) The PSL agreement also represented that the Biomass purchased had a minimum CBD content of 10 percent, and that the finished oil would have a CBD content between 10 and 18 percent. (Id., ¶¶ 43, 46.) Neither Thar nor Thar Extracts, LLC, was a party to the PSL Agreement.

### 2.  The Second Contract: Sound Wellness contracts with Thar.

Between January and March 2019, PSL informed Sound Wellness that there were delays in installing the Thar equipment. (Id., ¶ 77.) In February 2019, Thar and PSL

informed Sound Wellness that it would need to sign a separate contract with Thar for Thar to process the Biomass. (Id., ¶ 84.)  Sound Wellness alleges that all three parties—Sound Wellness, PSL, and Thar—understood that this new contract applied to the same extraction services for which Sound Wellness had contracted with PSL in the PSL Agreement. (Id., ¶¶ 84-86.)

On March 4, 2019, Sound Wellness and Thar executed the "Toll Processing Agreement" ("TPA"), by which Thar agreed to process Sound Wellness's hemp. (Id., ¶ 98.) PSL was not a party to this contract, and the contract does not contain the terms of the PSL Agreement. The contract provides that Thar will provide processing services and produce "extracted oil." (Id., ¶ 103.) The contract does not specify that the finished oil will be of any specific CBD potency or of any particular quality. The contract states that the quality of "customer furnished material" is the responsibility of Sound Wellness. (Docket No. 78-5 at p. 7.)

The contract further does not specify the location of the processing Thar will perform, or represent that Thar possesses a New York hemp processing license. (Docket No. 78, ¶¶ 109, 111.) The contract states that Thar will have "at least one employee" present during processing. (Id., ¶ 112.) Finally, the contract states that "homogenizing" or "blending" will be "through Plant Science Labs." (Id., ¶ 115.)

The TPA contains an integration clause, which states, "these Terms and Conditions constitute the entire agreement between the parties unless and except where specifically noted and agreed to in writing by both parties. All other terms and conditions express or implied by statue [sic] or otherwise are excluded to the fullest extent permitted by law." (Docket No. 78-5 at p. 4.) Although this was not in the TPA, Sound Wellness

believed that Thar and PSL would work together to perform the services described in both the PSL Agreement and the TPA. (Docket No. 78, ¶ 92.)

Sound Wellness provided Thar an upfront payment of $130,000 on or about May 22, 2019, and made the Biomass available for processing. (Id., ¶ 118.) While awaiting processing, the Biomass was stored at a facility in Romulus, New York, that PSL controlled. (Id.) By early June 2019, the Thar equipment still had not been installed in the PSL facility. (Id., ¶ 126.) Sound Wellness then entered an oral agreement with both Thar and PSL to move the Biomass to Thar's Pittsburgh facility for processing. (Id.) Sound Wellness alleges that it agreed to this move in reliance on Thar's president Todd Palcic's assertion that Thar was processing other biomass from the same farms as Sound Wellness's, and that biomass was processing "beautifully." (Id., ¶ 127.)

On June 10, 2019, Thar told Sound Wellness that the Biomass had tested positive for *e.coli* and that it would not process the material at its Pittsburgh facility. (Id., ¶¶ 129, 131.) At this time, as Sound Wellness later learned, Thar performed potency testing on the Biomass and learned that it had CBD potency of between 5.8% and 6.01%. (Id., ¶ 166.) Thar did not inform Sound Wellness of this result until around September 20, 2019. (Id.) The Biomass was transferred to PSL's New York facility on or around July 10, 2019. (Id., ¶ 144.)

### 3. Processing of the Biomass.

Upon the arrival of the Biomass at PSL's New York facility, either Thar or PSL heat-treated the Biomass using Thar's equipment to eliminate the *e. coli*. (Id., ¶ 145.) The heat treatment changed the nature of the Biomass and "changed the nature of subsequent processing services required." (Id., ¶ 146.)

5

In late August or early September 2019, the Biomass was processed at the PSL facility, on Thar equipment. (Id., ¶ 147.) This "extraction processing" was performed by the "Thar-PSL Joint Venture." (Id., ¶¶ 148-49.) Sound Wellness alleges that this processing failed to take into account the changes caused by Thar's heat processing and therefore damaged the Biomass, creating "poor quality" oil. (Id., ¶¶ 161, 163.) Sound Wellness does not allege that this processing diminished the CBD potency of the oil, but simply that the "quality" was harmed. (Id., ¶ 161.)

In August or September of 2019, Sound Wellness had a sample of the biomass or oil product tested. (Id., ¶¶ 151-52.) Testing showed an exceedingly low CBD potency—lower than the 10% warranted in the PSL Agreement. (Id., ¶ 153.) The CBD content was so low that the material had no commercial value. (Id., ¶ 152.) Testing also showed that the oil was contaminated with acetone and hexane. (Id., ¶ 154.)

### 4.  Thar's post-contract conduct.

Kim Eastman, the vice president of Jushi (Sound Wellness's parent company), emailed Thar's chemist Dr. Jason Lupoi regarding problems with the "potency" and the "quality" of the oil. (Id., ¶ 155.) In response, Lupoi suggested that the high potency that had been indicated by PSL's pre-contract testing may have resulted from selective testing. (Id., ¶157.) Lupoi copied PSL president Barnhart and Thar president Palcic on this email. (Id., ¶ 155.) Lupoi also addressed the acetone and hexane test results.

Around September 26, 2019, in response to Sound Wellness's concerns about potency and quality, Lupoi and Palcic—both of Thar—proposed a "mixing process" to homogenize the oil. (Id., ¶ 178.) Palcic stated, "[i]f you don't want us to heat it, then you get what we have now – a big mix of thick crude that has stratified in the containers." (Id.,

¶ 179.) Sound Wellness agreed to this mixing process and Palcic agreed that mixing would be performed at Thar's cost, with someone from Jushi present. (Id., ¶¶ 181-82.) The homogenization was eventually done around October 16, 2019 (Id., ¶ 190.)

The mixing process did not remedy the low quality of the oil, which had a watery substance on top. (Id., ¶ 195.) Nor did the mixing process change the potency of the oil, which remained below 10% CBD potency and therefore commercially worthless. (Id., ¶ 196.) Sound Wellness took possession of the oil from PSL around November 6, 2019. (Id., ¶ 201.) On January 9, 2020, after multiple demands by Thar for payment, Sound Wellness's counsel sent a letter to PSL and Thar giving notice of the problems with the oil. (Id., ¶ 202.)

Sound Wellness alleges that the final product tendered by PSL and/or Thar and/or Thar Extracts was below 10% potency, was unusable, and had no commercial value. (Id., ¶ 203). Sound Wellness alleges that both parties knew, due to their joint venture, that the Biomass would not produce commercially viable oil. (Id., ¶ 205.) Sound Wellness further alleges that Thar intentionally withheld its June 2019 testing result—indicating a low CBD level—to induce Sound Wellness not to terminate the TPA. (Id., ¶¶ 207, 216.) It also alleges, separately, that Thar failed to produce oil with CBD potency above 10% or of high quality. (Id., ¶ 217.)

## B.    Procedural History

Thar sued Sound Wellness in Pennsylvania for the amount remaining due under the TPA on May 20, 2020, alleging breach of contract and unjust enrichment. (Docket No. 1-1 at p.1.) Sound Wellness removed the action to the United States District Court for the Western District of Pennsylvania and then answered Thar's complaint and asserted

counterclaims. (Docket No. 2.) On July 15, 2020, Sound Wellness filed a third-party complaint against PSL and Barnhart and later filed amended counterclaims against Thar and an amended third-party complaint against PSL and Barnhart. (Docket Nos. 10, 23, 40.)

PSL and Barnhart subsequently moved to dismiss Sound Wellness's third-party claims for lack of personal jurisdiction or improper venue, seeking in the alternative to have the case transferred to the Western District of New York. (Docket No. 42.) Over Thar's and Sound Wellness's objections, United States District Judge Marilyn Horan transferred the entire case to this district. (Docket No. 53, 54.)

After transfer, both PSL and Thar filed motions to dismiss (Docket Nos. 64, 66), which this Court resolved in a prior decision. Thar Process, Inc. v. Sound Wellness, LLC, No. 21-CV-422S, 2022 WL 170608, at *1 (W.D.N.Y. Jan. 18, 2022). (Docket No. 77.) Relevant to the instant action, this Court granted Thar's motion to dismiss Sound Wellness's Amended Counterclaims but granted Sound Wellness leave to amend. Sound Wellness filed its Second Amended Counterclaims against Thar on February 1, 2022, alleging only breach of contract.[3] (Docket No. 78.) Thar then filed the instant motion to dismiss, which Sound Wellness opposes. (Docket No. 85.)  After Thar replied (Docket No. 96), this Court took the motion under advisement without oral argument.

### III.  DISCUSSION

Thar moves to dismiss Sound Wellness's Second Amended Counterclaims

---

[3] Sound Wellness restates its second and third causes of action, for fraud and constructive fraud in contract, but does so "solely to preserve them for appeal." (Docket No. 78 at pp. 33, 36.) This Court has already dismissed these claims and will direct Sound Wellness to file amended counterclaims omitting these claims.

pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Sound Wellness opposes Thar's motion.

### A. Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). "A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." Tradeshift, Inc. v. Smucker Servs. Co., No. 20-CV-3661 (MKV), 2021 WL 4463109, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting Inter-Am. Dev. Bank v. IIG Trade Opportunities Fund N.V., No. 16 CIV. 9782 (PAE), 2017 WL 6025350, at *4 (S.D.N.Y. Dec. 4, 2017) (internal citations and quotations omitted)).

Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S.

at 678 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id.; Fed. R. Civ. P. 8(a)(2).  Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth—such as conclusory allegations, labels, and legal conclusions—are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

## B. Sound Wellness has plausibly alleged that Thar breached the parties' contract.

Thar moves to dismiss the only counterclaim alleged in Sound Wellness's Second Amended Counterclaims—breach of contract. Sound Wellness alleges that Thar

breached the contract between the parties when it delivered low-quality, low-potency oil to Sound Wellness.

The TPA states, and the parties agree, that Pennsylvania law controls the contract between them. (See Docket No. 78-5 at p. 10.) This Court therefore finds it proper to apply Pennsylvania law to this dispute.[4]

Thar's argument, at its simplest, is that it did not breach any of the terms of the TPA and that it cannot be held to any terms not contained in that contract. Sound Wellness argues, to the contrary, that the ambiguity of the TPA and the absence of certain crucial terms require this Court to look to extrinsic evidence to construe the full agreement between Sound Wellness and Thar.

In Pennsylvania, as elsewhere, if the language of a contract is plain and unambiguous, it is to be enforced according to its terms and the intent of the parties is to be determined solely from the text of the contract. Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc., 745 F. Supp. 2d 628, 635 (W.D. Pa. 2010) (citing Steuart v. McChesney, 444 A.2d 659, 661 (Pa.1982)).

On the other hand, Pennsylvania law provides that if a contract term is ambiguous, the court may look to extrinsic evidence to divine the parties' intent. Midatlantic Bulk

---

[4]     "[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997)). See also Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.").

Because the parties both agreed to a Pennsylvania choice-of-law provision (see Docket No. 23-5 at p. 10) and briefed their arguments with the assumption that Pennsylvania law applies, this Court will evaluate Plaintiffs' fraud and contract claims under Pennsylvania law. Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc, No. 20 CIV. 9993 (KPF), 2021 WL 5909976, at *13 (S.D.N.Y. Dec. 10, 2021) (citing Krumme v. Westpoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (the parties' "implied consent ... is sufficient to establish choice of law").
.

Transfer, Inc. v. Morton Salt, No. CIV. A. 94-5930, 1995 WL 102658, at *2–3 (E.D. Pa.

Mar. 9, 1995) (citing Dep't of Transp. v. IA Constr. Corp., 588 A.2d 1327, 1330 (Pa.

Commw. Ct. 1991) ("If the intention of the parties is unclear from the words of the contract,

we may examine extrinsic evidence including consideration of the subject matter of the

contract, the circumstances surrounding its execution, and the subsequent acts of the

parties.")). Some Pennsylvania courts have also stated that if a contract is silent on an

issue, the court may look to extrinsic evidence to define the parties' intent. Kingsly

Compression, Inc. v. Mountain V Oil & Gas, Inc., 745 F. Supp. 2d 628, 635 (W.D. Pa.

2010) ("[I]f a contract [or lease] term ... is silent on an issue, the court is free to look to

extrinsic evidence to [define] the parties' intent.") (quoting Midatlantic Bulk Transfer, 1995

WL 102658, at *2 (citing IA Constr., 588 A.2d at 1330 (1991))); Herzog v. Herzog, 2005

PA Super 393, ¶¶ 15-16, 887 A.2d 313, 317 (2005) (examining parties' conduct in

construing reasonable expectations where separation agreement did not specify the

amount an ex-husband was to pay to refurbish ex-wife's new home).

As an aid to contract interpretation, a court can look to the subsequent conduct of

the parties or their course of performance, so long as the conduct manifests a common

understanding of the agreement at issue. Vanett v. Vanett, No. 1792 EDA 2015, 2016 WL

5344129, at *4 (Pa. Super. 2016) (citing Herzog, 887 A.2d at 317).

1. **Ambiguity and missing terms.**

Sound Wellness argues that, because the TPA is both ambiguous and missing

certain key terms, this Court should use the PSL Agreement to resolve the ambiguities

and supply the missing terms. This Court agrees that the TPA contains certain

ambiguities but it does not agree that those ambiguities permit it to supply terms that were

not included in the TPA.

This Court agrees with Sound Wellness that the TPA contains certain ambiguities. The TPA is solely between Thar and Sound Wellness—PSL is not a party. Yet the TPA states that Thar will have "at least one employee present during the processing." This term raises the question where the processing would take place and whose employees the rest of the processors would be. "[W]here ambiguity is present, evidence of prior or contemporaneous oral agreements is admissible to explain or clarify or resolve *the ambiguity*, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004) (emphasis added). Extrinsic evidence would therefore be justified to construe the location and employees for the TPA to be carried out.

But the Biomass being processed in one place instead of another, or by one party's employees and not the other's, does not bear any relation to the harm that Sound Wellness alleges. Sound Wellness's breach-of-contract claim is that Thar provided it with "poor quality" and "low potency" CBD oil. It does not allege any harm stemming from where the processing took place or which employees processed the Biomass. And regarding quality and potency, this Court perceives no ambiguity in the TPA. In fact, the TPA is silent about both the "quality" (which this Court takes to mean texture, viscosity, homogeneity, water content) and "potency" (i.e. CBD percentage) of the finished oil.

Sound Wellness argues that the TPA's silence as to the potency and quality of the finished oil, coupled with the extensive dealings among Sound Wellness, PSL and Thar, and PSL's and Thar's joint venture, all permit this court to supply the "missing term" in the TPA contract and import the PSL Agreement's guarantee of CBD potency. But the cases

where Pennsylvania courts have looked to extrinsic evidence to supply "missing terms" are limited. In Kingsly, for example, which Sound Wellness cites, the court supplied a delivery time of 24 to 28 weeks where a lease agreement was silent as to time. Kingsly, 745 F. Supp. 2d at 635. But in so doing, the court looked to "the manner in which the parties have engaged in lease transactions for units in the past," noting the parties' ongoing business relationship and past dealings. Id. Here, on the contrary, there are no allegations of an ongoing business relationship, or ongoing obligations, between Sound Wellness and Thar.

Further, the principle cited in Kingsly, a case in federal court, is not so broad as Sound Wellness argues. To justify supplying a missing term, the Kingsly court cited Midatlantic Bulk Transfer for the proposition that "if a contract term is ambiguous *or if the contract is silent* on an issue, the court is free to look to extrinsic evidence to divine the parties' intent." Midatlantic Bulk Transfer, 1995 WL 102658, at *2 (E.D. Pa. Mar. 9, 1995) (emphasis added). But Midatlantic Bulk Transfer cited a case that did *not* refer to contractual silence but only restated the rule for interpreting ambiguous contracts. Id. (citing IA Constr. Corp., 588 A.2d at 1330 ("If the intention of the parties is *unclear from the words of the contract*, we may examine extrinsic evidence including consideration of the subject matter of the contract, the circumstances surrounding its execution, and the subsequent acts of the parties.") (emphasis added)). This Court does not find these cases persuasive for the broad proposition that, simply because the TPA does not mention the quality or potency of the finished oil, this Court may use extrinsic evidence to supply those terms.

Finally, even if this Court looked to the context of the contract's creation, Sound

Wellness does not plausibly allege that Thar at any time expressed the intention to guarantee the quality and potency of the finished oil, or to take on the obligations of the PSL Agreement.

This Court finds that a consideration of the context of the TPA's creation is not warranted, both because the contract is not ambiguous as to quality and potency of the finished oil, and because it does not find a legal basis to read those "missing terms" into the parties' agreement.

**2. Thar's post-processing conduct suggests that it considered itself responsible for the oil's quality.**

Sound Wellness argues that Thar's conduct after the contract was formed also reveals that Thar considered the TPA to promise finished oil of a certain quality and potency. This argument is convincing.

Pennsylvania law allows a court to look to course of performance to interpret a contract, even where the contract is not ambiguous. "[E]vidence of the parties' course of performance is not barred by the parol evidence rule and may be considered in contract interpretation even in the absence of ambiguity." Viancourt v. Paragon Wholesale Foods Corp., No. CV 20-628, 2020 WL 7632013, at *2–3 (W.D. Pa. Dec. 6, 2020), reconsideration denied, No. CV 20-628, 2020 WL 7614618 (W.D. Pa. Dec. 22, 2020) (citing Langer v. Monarch Life Ins. Co., 879 F.2d 75, 81 (3d Cir. 1989) ("[E]ven if the contract was not patently ambiguous, we would consider the parties' course of performance ....")). In other words, "[it is] an erroneous belief that a writing must be ambiguous in order to justify consideration of the parties' post-agreement conduct. … 'course of performance is always relevant in interpreting a writing.'" Pennsylvania Eng'g Corp. v. McGraw-Edison Co., 459 A.2d 329, 332 (Pa. 1983) (quoting Atl. Richfield Co. v.

Razumic, 390 A.2d 736, 741 n.6 (Pa. 1978)).

This Court finds that Sound Wellness's allegations about Thar's course of performance make it plausible, at this stage, that Thar considered itself responsible for the quality of the finished oil. Sound Wellness alleges that, after processing, the oil was of a "poor quality" because Thar's heat treatment had damaged it. (Docket No. 78, ¶ 152-54, 161-62.) Thar's president, Todd Palcic, referred to the processed oil in an email as "a big mix of thick crude that has stratified in the containers." (Id., ¶ 179.) In response to Sound Wellness's concerns about the oil's quality, Palcic and Thar's chemist Jason Lupoi suggested heating and mixing the oil to homogenize it and improve its quality. (Id., ¶¶ 178-80.) Thar then performed a "mixing process" in an attempt to fix the oil's "quality and potency." (Id., ¶¶ 190-91.) This Court finds that these allegations make it plausible that Thar understood itself to be responsible for the quality of the finished oil.

Sound Wellness uses the terms "quality" and "potency" in its claims about Thar's conduct, and argues that Thar's conduct shows that it considered itself responsible not only for the quality of the processed oil, but for its CBD potency. (See Docket No. 94 at pp. 18-19.) But none of the facts Sound Wellness has alleged about Thar's post-processing conduct make it plausible that Thar was attempting to remedy the low CBD potency of the oil.  Nor does Sound Wellness allege any facts suggesting that Thar even could have affected the potency of the finished oil, either by causing the low potency of the original Biomass or by transforming high-potency Biomass into low-potency oil. Sound Wellness has thus not plausibly alleged that Thar considered itself responsible for the oil's potency (i.e. CBD content), as opposed to its quality (i.e. viscosity, texture, etc.).

Insofar as Sound Wellness is alleging that Thar breached the TPA by providing

16

low potency oil, therefore, that claim is dismissed. But this Court finds that it has plausibly alleged that the parties understood Thar to be responsible for the quality of the finished oil, despite the lack of an explicit term to that effect in the TPA. It will permit Sound Wellness's breach-of-contract claim to proceed on that basis alone.

### C. Previously Dismissed Claims.

Sound Wellness included in its Second Amended Counterclaims claims that this Court has already dismissed, for fraud, constructive fraud in contract, and contract rescission. (See Docket No. 77 at pp. 33-38.) It states that it is reiterating these claims "solely to preserve them for appeal." (Id. at pp. 33, 36, 38.) But realleging previously dismissed claims to preserve them for appeal is not required in the Second Circuit. P. Stolz Fam. P'ship L.P. v. Daum, 355 F.3d 92, 96 (2d Cir. 2004) ("We will not require a party, in an amended complaint, to replead a dismissed claim in order to preserve the right to appeal the dismissal ….). Further, keeping already-dismissed claims in the operative complaint risks confusion and needless discovery. This Court will therefore direct Sound Wellness to refile its Second Amended Counterclaim without the fraud, constructive fraud in contract, and contract rescission claims, to conform with this Court's prior decision. (See Docket No. 77.)

### IV.  CONCLUSION

Because this Court finds that Sound Wellness has stated a claim against Thar for breach of contract, Thar's motion to dismiss Sound Wellness's Second Amended Counterclaims (Docket No. 85) will be denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Counter-Defendant Thar's Motion to Dismiss (Docket No. 85) is DENIED.

FURTHER, that Sound Wellness must file a Third Amended Counterclaim--omitting its fraud, constructive-fraud-in-contract, and contract-rescission claims but making no other changes—within 14 days of the entry date of this decision.

FURTHER, that Thar must answer Sound Wellness's Third Amended Counterclaim within 14 days of its filing.

SO ORDERED.


Dated:      January 3, 2023
            Buffalo, New York


                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge